IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNDERSINGH BALA, )
)
    Plaintiff, )
)
v. )
) Civil Action No. 3:12CV748
COMMONWEALTH OF VIRGINIA )
DEPARTMENT OF CONSERVATION )
AND RECREATION, )
)
    Defendant. )

## MEMORANDUM OPINION

THIS MATTER is presently before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the Commonwealth of Virginia Department of Conservation and Recreation ("DCR") on November 20, 2012. For the reasons set forth herein, Defendant's Motion to Dismiss will be granted, and the action will be dismissed without prejudice.

## I. BACKGROUND[1]

*Pro se* Plaintiff Sundersingh Bala ("Bala"), an East Indian male and naturalized citizen of the United States, has been an employee of DCR for over 25 years, starting as an Accountant Senior Grade in 1985. (Amended Compl. at ¶¶ 5, 9, ECF No. 3.) Bala claims to hold multiple advanced degrees and to have 35 years of experience in finance and accounting, including grants management work for DCR between 1985 and 1994. (*Id.* at ¶ 8, 10.)

---

[1] As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

1

Bala alleges an extensive history of racial discrimination and retaliation by DCR. He claims that since 1985 DCR has repeatedly declined to elevate him to other positions within DCR even though he allegedly was better qualified than the other applicants. (*Id.* at ¶¶ 10-24.) Bala also alleges that DCR selectively abolished his position twice. (*Id.* at ¶13.) Throughout his tenure with DCR, Bala has filed numerous internal grievances and Equal Employment Opportunity Commission ("EEOC") charges, and has otherwise been quite litigious, including a prior civil suit in this Court that was dismissed with prejudice in 2001. *See Bala v. Commonwealth of Virginia Dep't of Conservation and Recreation*, Civil Case No. 3:01CV119 (E.D. Va. 2001).

Bala claims that DCR hired less qualified candidates for twelve different positions for which he applied between 1985 and 2011. (*Id.* at ¶¶ 10-24.) Bala alleges that those individuals selected for the positions were younger and less experienced than him. (*Id.*) Of those selected instead of Bala, the majority allegedly were Caucasian males, though three of them were Caucasian females and one was an African-American female. (*Id.*)

The alleged selective terminations of his position occurred in 1994 and 2009. (*Id.*) Bala asserts that in both instances DCR used budget constraints as a pretext to terminate him in retaliation for his litigiousness. (*Id.*)

The instant action concerns two alleged events. First, on September 8, 2009, DCR informed Bala that due to budget cuts, he would be laid off on December 31, 2009. (*Id.* at ¶ 12.) Bala filed a grievance challenging his termination and an EEOC charge alleging retaliation. (*See* Amended Compl. Ex. 8, ECF No. 3-2, Ex. 9, ECF No. 3-2, and Ex. 10, ECF No. 3-3.) The EEOC found DCR's articulated rationale for laying off Bala to be

pretextual and suggestive of retaliation. (Amended Compl. Ex. 8 at 2.) Concluding that there was "reasonable cause to believe that [DCR] engaged in prohibited employment discrimination against [Bala]," the EEOC encouraged the parties to reach a settlement. (*Id.*) The parties reached an agreement settling the matter on July 7, 2011. (*See* Amended Compl. Ex. 11, ECF No. 3-4.)

Second, DCR declined to interview Bala for Position #00901, a grants manager position, on August 15, 2011. Bala asserts that he spent nine of his years at DCR performing the same duties as those required of Position #00901. (Amended Compl. ¶ 10.) He contends that ten applicants less qualified than him were selected to interview for the position. (*Id.*) DCR reportedly hired an African-American female to fill the position. (Def.'s Brief in Support of Mot. to Dismiss 5.)

Bala filed his Amended Complaint on November 6, 2012. The Court construes Bala's Amended Complaint to assert five claims against DCR for violations of Title VII of the Civil Rights Act of 1964.[2] First, Bala contends that DCR discriminated against him on the basis of national origin and race by laying him off in 2009. Second, Bala alleges that DCR similarly discriminated against him by declining to interview him for Position #00901 in 2011. Third, he claims that DCR unlawfully retaliated against him by laying him off. Fourth, he alleges that DCR's decision not to interview him for Position #00901 constituted unlawful retaliation. Fifth, Bala claims that DCR conspired to violate his civil rights when DCR laid him off in 2009.

---

[2] In the Amended Complaint, Bala lists the allegations in two claims, "CLAIM-I" and "CLAIM-II." However, Bala has grouped multiple claims together under each heading. Accordingly, the Court has divided the allegations into five distinct claims and will analyze them separately.

3

On November 20, 2012, DCR filed the instant Motion to Dismiss. Bala has responded, and DCR has replied.[3] This matter is ripe for disposition.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and

---

[3] Following DCR's Reply, Bala filed without leave a Supplimental Brief in Opposition of the Motion to Dismiss [sic] (ECF No. 17). Local Civil Rule 7(f)(1) provides that no briefs, aside from the response and reply briefs, "may be filed without first obtaining leave of Court." Accordingly, Bala's supplemental brief was improperly filed, and the Court will not consider it. Even were the Court to consider the material in the supplemental brief, the outcome would remain the same, as the material in the new brief does nothing to alter the Court's analysis.

common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition, the Court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (per curiam).

## III. ANALYSIS

### A. Claim One: Discrimination and 2009 Layoff

Bala claims that DCR discriminated on the basis of national origin and race by laying him off in 2009. Title VII provides that it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "the plaintiff has the initial burden of proving a *prima facie* case of discrimination." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). To establish a *prima facie* case of discrimination under Title VII where the plaintiff has not presented direct evidence of discrimination and claims he was wrongfully terminated, he must allege: "(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a

5

level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citations omitted).[4]

Should the plaintiff establish a *prima facie* case of discrimination, the burden then shifts to the defendant to produce evidence "that the adverse employment actions were taken for a legitimate, non-discriminatory reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (citations omitted) (quotation marks omitted). The plaintiff may rebut the defendant's claimed non-discriminatory reason by showing it to be pretextual. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004).

In the instant case, DCR contends that Bala has failed to allege facts sufficient to satisfy the fourth element of a *prima facie* case of discrimination.[5] To state a *prima facie* case, plaintiff "must sufficiently allege that his job remained open to similarly qualified applicants after he was discharged." *Fletcher v. Philip Morris USA Inc.*, 2009 U.S. Dist. LEXIS 63094, at *14 (E.D. Va. 2009). Not only has Bala failed to allege that his job remained open to similarly qualified applicants, but he has also admitted that he was rehired to perform his old duties in February 2010 "because there was no one else at [DCR] who could perform [his] task." (Pl.'s Resp. to Mot. to Dismiss 8-9.)

---

[4] These factors are a restated, and more precise, version of those factors first articulated in *McDonnell Douglas*. Generally, the fourth factor simply requires a showing that similarly situated individuals who are not members of a protected class received more favorable treatment.

[5] DCR implicitly argues that Bala waived Claim One when he entered the settlement agreement with DCR on July 7, 2011. (Amended Compl. Ex. 11, ECF No. 3-4.) Per the terms of the agreement, Bala "waive[d] any rights accorded to him pursuant to the hearing officer's decision of February 1, 2011 . . . ." (*Id.*) DCR raises the agreement as a potential defense, but fails to fully develop the argument. While the settlement agreement appears to constitute a waiver of any claims arising from the 2009 layoff, the Court's decision does not rest on this argument.

6

Bala's own admissions further undermine his claim that DCR acted with discriminatory intent. Bala acknowledges that DCR informed him that his position was going to be abolished due to budget cuts. (Amended Compl. ¶ 13.) As well, Bala's EEOC Charge of Discrimination for the 2009 layoff indicates that six other DCR employees were terminated and given retirement packages. (Def.'s Brief in Support of Mot. to Dismiss Ex. 1, ECF No. 6-1.) Finally, Bala offers his own alternative, non-discriminatory explanation for why his position was abolished. He claims that:

> [He] questioned Division of Finance about [a] sales tax overpayment in the month of July 2008. When Division of Finance did not take any action/investigated/resolved this problem until January 2009, [Bala] reported/informed to the higher authorities and Employee Suggestion Program. [Bala's supervisor] did not like it, and he retaliated . . . by laying [Bala] off on September 8, 2009. [sic]

(Amended Compl. Ex. 13, ECF No. 3-4.) Bala does not provide any further details about the incident, but it does present an alternative explanation for his layoff. Given Bala's own admissions that DCR had other, non-discriminatory motivations for laying him off and his failure to allege that his position remained open to similarly qualified applicants, the Court finds that Bala has failed to state facts sufficient to establish a *prima facie* case of discrimination and, therefore, will dismiss Claim One.

### B. Claim Two: Discrimination and Non-Selection to Interview in 2011

Claim Two alleges that DCR discriminated against Bala by declining to interview him for Position #00901. As discussed above, the plaintiff must allege facts sufficient to show a *prima facie* case of discrimination in violation of Title VII. This showing requires Bala to allege facts satisfying all four elements under *McDonnell Douglas*. Ultimately, the

7

plaintiff must show that he "would have been promoted but for [his] race." *Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1386 (4th Cir. 1987).

Here, DCR concedes that Bala is a member of a protected class and that he suffered an adverse employment action. DCR only challenges Claim Two on the remaining two elements, arguing that Bala has failed to allege facts sufficient to show that he was qualified for the position and that similarly situated employees and applicants who were not members of a protected class received more favorable treatment.

DCR contends that Bala was not qualified for the position, citing his low performance evaluations, prior job-related misconduct, and lack of relevant of experience. (Def.'s Brief in Support of Mot. to Dismiss 10-11.) Bala counters that his poor performance reviews were the result of discrimination and retaliation against him by his supervisors. (Pl.'s Resp. to Mot. to Dismiss 3-6.) Bala admits to having defrauded DCR by misreporting his hours; DCR required him to repay the department for 397 unworked hours. (Pl.'s Resp. to Mot. to Dismiss 7.) DCR further notes that Bala had not dealt with grants since 1994, which Bala admits in his Amended Complaint, and argues that his prior relevant experience was too dated to satisfy the requirements for Position #00901. (Def.'s Reply Brief to Pl.'s Resp. to Mot. to Dismiss 4-5.) DCR adds that Bala had limited supervisory experience, having managed only one employee.

DCR also challenges Bala's conclusion that similarly situated employees and applicants who did not belong to a protected class received more favorable treatment. Without offering any support for his assertions, Bala concludes that "[he] was better qualified than the chosen ten applicants" and that "[his] scores [from the screening process]

8

were not an accurate reflection of [his] strengths and ... were deflated." (Pl.'s Resp. to Mot. to Dismiss 8.) DCR counters that the department "applied ten objective criteria to screen all applicants for the interview process." (Def.'s Brief in Support of Mot. to Dismiss 11.) DCR adds that thirty-two applicants, in addition to Bala, were not selected for interviews. (*Id.*)

While the well-pleaded facts establish that Bala is a member of a protected class and that he suffered an adverse employment action, the Court finds that Bala has failed to allege specific facts showing that DCR intended to discriminate against Bala because of his membership in a protected class. Bala has only offered conclusory allegations that DCR acted in a discriminatory fashion by declining to interview him.

Bala has not alleged facts sufficient to show that similarly situated employees and applicants who are not members of the protected class received more favorable treatment. Bala's own admissions make clear that his prior experience was limited, that he had received unfavorable performance reviews, and that he had engaged in prior misconduct. DCR claims that in evaluating Bala against the other candidates using ten objective factors Bala was not one of the ten applicants most deserving of an interview. In short, DCR has presented a legitimate, non-discriminatory justification for its decision.

To counter these points, Bala simply claims that his reviews and the selection process were unfairly altered by DCR as part of the effort to discriminate against him. The Fourth Circuit has made clear that subjective beliefs of discrimination alone are insufficient to state a claim. *See Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case

of discrimination."); *see also Johnson v. Runyon*, 1998 U.S. App. LEXIS 11823 (4th. Cir. 1998). Because Bala's claim of discrimination relies solely on his subjective belief that he was discriminated against, the Court will dismiss Claim Two.

### C. Claim Three: Retaliation and 2009 Layoff

In addition to the claims of discrimination, Bala alleges that DCR's decision to lay him off in 2009 was in retaliation for his filing of internal grievances and EEOC charges. In the relevant part, Title VII provides that "[i]t shall be an unlawful . . . for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, the plaintiff must show 1) that he engaged in a protected activity, 2) that the defendant(s) took adverse action against him, and 3) that a causal relationship exists between the protected activity and the adverse action. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004); *see also Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006). As with discrimination claims, once the plaintiff has made a prima facie showing, the burden shifts to the defendant to establish a legitimate, non-retaliatory reason for the action. *Price*, 380 F.3d at 212. Ultimately, the plaintiff must be able to show that the defendant's "proffered reasons are pretextual or his claim will fail." *Id.*

In challenging the sufficiency of Bala's Amended Complaint, DCR does not dispute that Bala has alleged facts sufficient to satisfy the three elements of a *prima facie* case of retaliation. However, DCR argues that Bala has failed to allege facts sufficient to show that

its proffered legitimate reason for laying him off was pretextual.[6] Bala draws a potential causal connection between his filing of grievances and EEOC charges and his layoff in 2009. Bala alleges that his layoff was in retaliation for a grievance he filed in May 2009 after being denied an interview for another position. (Pl.'s Resp. to Mot. to Dismiss 8.) The grievance was still being processed in late August 2009. (*Id.*) While the timing suggests a causal link between the protected activity and the adverse action, DCR has offered a legitimate reason for its actions – DCR claims that a 2009 gubernatorial order "required [the department] to engage in budget cuts, and [layoffs] were a necessary component of these cuts." (Def.'s Brief in Support of Mot. to Dismiss 3.) In response to DCR's proffered legitimate reason for his layoff, Bala claims that:

> [DCR's] stated reason for laying [him] off is simply pre-textual, a disguise for discrimination and retaliation. [DCR] laid [him] off because [he] had engaged in a protected activity. [DCR] targeted [him] for a layoff without following Commonwealth policy.

(Pl.'s Resp. to Mot. to Dismiss 5.)

The Court agrees that Bala has failed to allege facts with sufficient particularity to show that DCR's stated justification was pretextual. Bala only makes conclusory allegations that DCR's stated reason was pretextual. Bala's own admissions compromise his strained claim of retaliation. Bala's Amended Complaint states that DCR informed him in 2009 that budget cuts were the reason for laying him and others off. (Amended Compl. ¶ 13.) Bala also has admitted that six other DCR employees were terminated and given

---

[6] As with Claim One, it can be argued that Bala waived Claim Three when he entered the settlement agreement with DCR on July 7, 2011. (Amended Compl. Ex. 11.) DCR does not raise the agreement as a potential defense to Claim Three. As discussed in footnote 3, the terms of the agreement suggest that Bala has waived any claim arising from the 2009 layoff, though the Court's decision does not rest on the settlement agreement.

11

retirement packages at the same time. (Def.'s Brief in Support of Mot. to Dismiss Ex. 1, ECF No. 6-1.) Thus, not only has Bala failed to raise sufficient factual allegations to rebut the legitimate reason given by DCR, but he has also provided factual allegations validating the legitimacy DCR's reason.

Bala has also introduced an alternative, non-discriminatory explanation for why DCR retaliated against him – his reporting of a sales tax overpayment in July 2008, which was discussed in greater detail above in Section III.A. (Amended Compl. Ex. 13, ECF No. 3-4.) This alternative theory of retaliation is not covered by Title VII and further compromises his claim by raising an alternative motive for DCR's actions.

In light of Bala's allegations and admissions, the Court finds that Bala has failed to allege facts sufficient to show that DCR's proffered legitimate reason for laying Bala off was pretextual. Accordingly, Bala has failed to allege sufficient facts to state a claim for relief, and the Court will dismiss Claim Three.

### D. Claim Four: Retaliation and Non-Selection to Interview in 2011

Bala alleges a second claim of retaliation in violation of Title VII, claiming that DCR's decision not to interview him for Position #00901 was in retaliation for his filing of EEOC complaints. (Amended Compl. ¶¶ 26, 29, 31-32.) The plaintiff must allege facts sufficient to support a *prima facie* case of retaliation in violation of Title VII. Accordingly, Bala must allege facts satisfying the three elements identified in *Price*, 380 F.3d at 212, and listed above in Section III.C. DCR neither disputes that Bala was engaged in a protected activity nor that he suffered an adverse employment action. DCR challenges Claim Four on the grounds that Bala has failed to allege facts sufficient to show that there was a causal

relationship between the protected activity and the adverse action. DCR also contends that Bala has not alleged sufficient facts to refute DCR's legitimate justification for declining to interview Bala for the position.

DCR's first argument for dismissal of Claim Four asserts that the timing of the protected activity and the adverse employment action is inconsistent with the legal requirements for establishing a causal relationship. Where the plaintiff fails to allege facts showing a direct cause and effect, the plaintiff may establish a causal relationship by inference. Specifically, the plaintiff can establish a *prima facie* case of retaliation by showing that the two events are "very close" in temporal proximity. *Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) In *Breeden*, the Supreme Court noted that "[a]ction taken ... 20 months later, by itself, suggests no causality at all." *Id.* at 273. The Fourth Circuit has indicated in two separate unpublished opinions that a time of three or four months between the protected activity and the adverse employment action is too long to infer a causal connection between the two events. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 232 (4th Cir. 2006); *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 963 (4th Cir. 2005).

In the instant case, Bala attempts to establish causation by showing a temporal relationship between the events. (Pl.'s Resp. to Mot. to Dismiss 8-9.) The protected activity at issue is Bala's filing of EEOC complaints in November 2009 and October 2011. (Def.'s Brief in Support of Mot. to Dismiss Exs. 1 and 2). The adverse employment action, Bala's non-selection to interview for Position #00901, occurred in August 2011. The time interval between the November 2009 EEOC complaint

and the August 2011 non-selection to interview, a period of twenty months, clearly is too long to infer a causal link between the events. As well, the claim of retaliation in response to the October 2011 EEOC complaint fails, since the protected activity occurred after his non-selection to interview. Because Bala has failed to allege facts sufficient to state a *prima facie* case of retaliation by DCR in declining to interview him for Position #00901, the Court will dismiss Claim Four.

The Court's decision to dismiss Claim Four is further supported by Bala's failure to offer any factual allegations to rebut DCR's proffered reason for declining to interview him. DCR claims to have evaluated the applications using ten objective criteria. DCR asserts that Bala was not as qualified as the ten applicants it decided to interview. Bala's admissions support DCR's position. Bala admits that he received poor performance reviews, but claims these were artificially low as a result of discrimination and retaliation by his supervisors. (Pl.'s Resp. to Mot. to Dismiss 3-6.) Bala also admits to having defrauded DCR by misreporting his time. (Pl.'s Resp. to Mot. to Dismiss 7.) These admissions only reinforce DCR's argument that Bala was not one of the stronger candidates for Position #00901. Thus, not only has Bala failed to show a causal relationship between the protected activity and the adverse employment action, but he has also failed to show that DCR's stated reason for declining to interview him was mere pretext.

### E. Claim Five: Conspiracy to Violate Plaintiff's Civil Rights

Lastly, Bala makes a brief and poorly stated claim that DCR "collectively conspired in an underhanded manner to lay [him] off and forced [him] to retire." (Amended Compl.

¶33.) 42 U.S.C. § 1985(3) makes it unlawful to "conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." To state a claim for relief under 42 U.S.C. § 1985(3), the plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Furthermore, the plaintiff must allege "an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* (citation omitted). Here, Bala has merely made a conclusory allegation that DCR conspired to violate his rights. Bala has offered a one sentence accusation and has failed to allege facts sufficient to satisfy any of the elements outlined above. Accordingly, the Court will dismiss Claim Five.

## IV. CONCLUSION

For the foregoing reasons, DCR's Motion to Dismiss will be granted, and the action will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan 3, 2013
Richmond, VA

15