IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SUNDERSINGH BALA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:12CV748–HEH |
| COMMONWEALTH OF VIRGINIA DEPARTMENT OF CONSERVATION AND RECREATION, | ) |
| Defendant. | ) |

MEMORANDUM OPINION
(Granting Defendant's Motion for Summary Judgment)

The claim at hand arises out of the employment of Plaintiff, Sundersingh Bala ("Bala"), with Defendant, Commonwealth of Virginia Department of Conservation and Recreation ("DCR").

Bala, who was originally proceeding *pro se*, filed the initial Complaint in this case on October 23, 2012 (ECF No. 1). Following the Motion to Dismiss filed by DCR, the Court issued an order on January 3, 2013, granting DCR's Motion and dismissing Bala's claims without prejudice (ECF No. 18, 19). The case returned to the Court's docket following an opinion (ECF No. 26) by the Fourth Circuit Court of Appeals that affirmed, in part, and vacated, in part, this Court's ruling on DCR's Motion to Dismiss.

Upon remand to this Court, Bala retained counsel in September 2013. The Court met with counsel for the parties on December 9, 2013, where a briefing schedule was

established and the Court granted Bala's request for leave to file his Amended Complaint. The next day, Bala, through counsel, filed his one count Amended Complaint (ECF No. 39) alleging retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3.

The case is presently before the Court on Defendant's Motion for Summary Judgment, filed January 10, 2014 (ECF No. 41). The parties filed detailed memoranda in support of their respective positions. The Court heard oral argument on February 20, 2014. At the conclusion of that hearing, the Court directed the parties to supplement their memoranda on the narrow issue of the Settlement Agreement. The facts and legal contentions are now adequately presented in the materials before the Court. For the reasons stated below, DCR's motion is granted.

I. BACKGROUND

As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving the motion for summary judgment.

Bala has been employed with DCR in the Richmond office since June of 1985. (Dep. of Sundersingh Bala ("Bala Dep.") at 8:5-8, ECF No. 42-2.) In 2009, following state budget cuts and consequent reduction in personnel, Bala and several other DCR employees were notified that they would be laid off at the end of the year. (*Id.* at 25:2-4, 25:25-26:8.) On October 5, 2009, Bala filed an employee grievance with the Department

2

of Employment Dispute Resolution ("EDR"). (Employee Grievance Form, Pl.'s Suppl. Mem. Opp. Def.'s Mot. Summ. J. Ex. 2 ("Grievance"), ECF No. 47-2.) Bala listed the following issues in the Grievance:

1. Misapplication of the Commonwealth of Virginia Lay off Policies and Procedures #1.30.
2. Discrimination against me on the basis of my national origin, and age.
3. Retaliation against me on the basis of previous filed EEOC charges, court cases, and grievances.

(*Id.*) Subsequently on November 2, 2009, Bala filed an EEOC Charge of Discrimination also alleging retaliatory discharge. (Bala Suppl. Decl. ECF No. 47-1.)

The initial ruling from the Hearing Officer on the Grievance determined that DCR had not discriminated, retaliated, or failed to follow policy. (Def.'s Mot. Summ. J. ¶ 29, ECF No. 42.) Bala requested further administrative review of this decision. (*Id.*) On February 1, 2011, the review resulted in the hearing officer rescinding the initial decision and ordering that Bala be reinstated. (Fourth Reconsideration Decision, Def.'s Mot. Summ. J. Ex. 3, ECF No. 42-3.) As part of the terms of Bala's reinstatement to his former position, the parties executed a Settlement Agreement on July 7, 2011.[1] (Settlement Agreement, Def.'s Mot. Summ. J. Ex. 7, ECF No.42-7.)

II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue of material fact" exists "if the

---

[1] The Settlement Agreement contemplates both the Grievance related to Bala's layoff as well as a previous grievance Bala filed in May 2009. The two were consolidated at the start of the grievance process before EDR.

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-48. Thus, the court must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 714 (4th Cir. 2013). However, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson v. Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995).

III. ANALYSIS

Summary judgment disposition in this instance turns on the Settlement Agreement between the parties. Settlement agreements are treated as contracts and are subject to the general principles of contract interpretation. *DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 560 (4th Cir. 2004). Interpretation of a contract presents a question of law for the Court. *Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 161-62 (4th Cir. 1993).

The Fourth Circuit has found that "contract interpretation is a subject particularly suited for summary judgment disposal," *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir. 1999) (citation omitted), and the analysis to be employed in evaluating summary judgment based on a contract is well settled:

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for a Court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

*Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993); *World-Wide Rights Ltd. v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). Accordingly, the Court must first determine if the contract is facially ambiguous. Before reaching that analysis, the Court must initially determine which substantive law is to be applied in evaluating the contract at issue. Typically the Court would begin its analysis by deciding what law controls its interpretation of the contract. Usually, the analysis would turn on state law, though jurisdiction here is purely a federal question. However, the Court need not conclusively resolve the choice of law question[2] because under either federal law or Virginia law, the Court would reach the same result.[3]

---

[2] A settlement agreement in a Title VII action presents a question of which substantive law should be applied in the contract interpretation. A claim "springing solely from federal law . . . is far removed from state law and substantive rights that are the creatures of state law." *Auer v. Kawasaki Motors Corp.*, 830 F.2d 535, 538 (4th Cir. 1987) (en banc) (citation omitted). "Once a claim—whatever its jurisdictional basis—is initiated in the federal courts, we believe that the standards by which that litigation may

There is no precise source of federal common law, but in crafting the federal common law of contract interpretation, the court looks to common rules and generally accepted principles. *See Fomby-Denson v. Dep't of the Army*, 247 F.3d 1366, 1374-75 (Fed. Cir. 2001) (citing *Priebe & Sons, Inc. v. United States*, 322 U.S. 407, 411 (1947)). An overarching principle of contract law, common to both federal and Virginia jurisprudence, applies, namely that, "[e]xcept as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply." *Lauritzen v. Larsen*, 345 U.S. 571, 589-90 (1953), *accord Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 181 Va.

---

be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles, independently derived." *Gamewell*, 715 F.2d at 115 (citation omitted). The Fourth Circuit notes that an underlying Title VII claim requires a uniform rule of decision to govern the release or settlement of the federal cause of action. *Gamewell*, 715 F.2d at 115.
 Yet, in a footnote, *id.* at 115 n.7, the court also pointed to its previous opinion where the court found that a settlement to terminate litigation of a federal claim was a "private contract entered into after private negotiations between the parties . . . . Both its validity and the interpretation of its terms are governed by Virginia law." *Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299, 1303 (4th Cir. 1978). While it is true that the parties arrived at a private contract after private negotiations in the present claim, the Title VII scheme would persuade the Court that federal common law interpretation principles ought to apply.
 But, as this Court has previously held, the choice of law governing the interpretation of a Title VII settlement agreement is unsettled between the Circuits and in this Circuit, where the question has never directly been confronted. *See Car Pool LLC v. Hoke*, 2013 U.S. Dist. LEXIS 146798, at *9 (E.D. Va. Oct. 11, 2012). The resolution of this unsettled doctrine is not required to dispense with the underlying claim.
 *But see Denzler v. Questech, Inc.*, 80 F.3d 97, 101 (4th Cir. 1996) (applying federal common law *and* state contract principles simultaneously to a contract under a different federal scheme).
[3] *See also Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997) (declining to decide governing law on the interpretation of a settlement agreement under Title VII) (citing *Bowden v. United States*, 106 F.3d 433, 439 (D.C. Cir. 1997) (same)).

6

402, 410 (1943)) ("Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."). Here, the parties explicitly agreed to the laws of Virginia in a choice of law provision in the Settlement Agreement.

Therefore, to interpret the terms of the contract, the Court will rely on the principles of Virginia law. The Commonwealth follows the "plain meaning" rule whereby the court is not at liberty to search for the contract's meaning beyond the instrument when the writing is a final agreement of the parties. *Berry v. Klinger*, 225 Va. 201, 208 (1983) (citation omitted); *Amchem Prods. v. Newport News*, 264 Va. 89, 98 (2002) (citation omitted) ("[W]hen the terms of a contract are clear and unambiguous, a court must give them their plain meaning."). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that parties intended what the written instrument plainly declares." *Id.* (citation omitted); *see Richfood, Inc. v. Jennings*, 255 Va. 588, 591 (1998) (finding that the express intention of the parties determines the scope of the agreement); *First Security Federal Savings Bank, Inc. v. McQuilken*, 253 Va. 110, 113 (1997) ("The scope of a release agreement, like the terms of any contract, is generally governed by the expressed intention of the parties."); *accord Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009). Where the language is clear, extrinsic evidence of the contracting parties' intentions will not be permitted. *Berry*, 225 Va. at 208. Thus, the parties' intent should be discerned solely from the four corners of the agreement. *Grant v. Carotek, Inc.*, 737 F.2d 410, 412 (4th Cir. 1984). Furthermore, when the

contract provisions are "too plain to be misunderstood[,] there is nothing to construe." *Kennard v. Travelers' Protective Ass'n*, 157 Va. 153, 158 (1931).

The Settlement Agreement before the Court was reached between the parties following the state-related grievance process. Bala's grievance was filed in response to the alleged misapplication of the Commonwealth's lay-off policies, discrimination on the basis of national origin and age, and retaliation for previous EEOC charges, court cases, and grievances. It was after the EDR processed this grievance that the parties entered into the Settlement Agreement now before the Court.

Contained in the Settlement Agreement are the following provisions which bear on the present analysis:

> [T]he parties have concluded that is would be in their best interests to resolve this situation by agreement;
>
> . . .
>
> THE PARTIES HEREBY DECLARE that the terms of this Agreement have been completely and carefully read and are fully understood and voluntarily accepted. This agreement only apply to the grievance dated October, 2009 or/and case # 9295 Hearing officer final decision issued on February 1, 2011. [sic]
>
> . . .
>
> This Agreement contains the complete understanding and agreement of the parties hereto with respect to all matters referred to herein, and all prior representations, negotiations, and understandings are superseded hereby.

(Settlement Agreement at 1, 2.) The "plain meaning" of these provisions, as well as the contract in its entirety, show that the parties intended the agreement to be final. The declarations leave no doubt that the both DCR and Bala intended that the Settlement Agreement resolve all pending claims or grievances. Moreover, the grievances clearly encompassed by the Settlement Agreement unequivocally included the allegation of retaliation. That allegation parallels the claim presently before the Court. There is only

8

one reasonable interpretation of this contract. In the absence of facial ambiguity, the language agreed to by the parties can only be construed as a final resolution of the retaliation claim.[4] Indeed nothing in the briefs or arguments before the Court even sugguests an independent basis for an additional, separate claim of retaliation.

Furthermore, "[a] settlement agreement by definition should end litigation." *Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425 (4th Cir. 1975). "If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit . . . is precluded." *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990) (citation omitted) (equating consent judgments to contracts and applying claim preclusion). Here, "[t]he settlement agreement signed by the parties, fairly and objectively interpreted, manifests an intent to completely close the book" on Bala's retaliation claim. *Id.* "As [the Supreme Court] ha[s] noted, it 'goes without saying that the court[] can and should preclude double recovery by an individual.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980)).

IV. CONCLUSION

The Court finds that the Settlement Agreement was intended by the parties to resolve the retaliation claim at issue in this case. The parties agreed that the Settlement

---

[4] Because the Court finds no ambiguity on the face of the contract, the Court does not consider extrinsic evidence proffered by the parties. Extrinsic evidence cannot be introduced to create an ambiguity when the intent of the parties is clear. *See In re BNX Systems Corp.*, 310 Fed. App'x 574, 577 (unpublished) (4th Cir. 2009); *Golding v. Floyd*, 261 Va. 190, 192-93 (2001). Though Bala submitted a supplemental declaration following the Motion hearing asserting that he did not intend to waive the pending EEOC claim of retaliation, the Court is constrained by law to look only to the unambiguous language of the document Bala signed.

Agreement was the full and complete understanding of the parties, and therefore it is incumbent on the Court to enforce its clear terms. Signatory remorse is not enough to invalidate the contractual terms.

Based on the foregoing analysis, the Motion for Summary Judgment will be granted and the claim will be dismissed with prejudice. An appropriate Order will accompany this Memorandum Opinion.

It is so ORDERED.

Date: March 27 2014
Richmond, VA

/s/
Henry E. Hudson
United States District Judge